IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:10cr249

SAMUEL J.T. MOORE, III

## MEMORANDUM OPINION

Before the Court are Defendant's MOTION FOR A NEW TRIAL (Docket No. 66) and MOTION PURSUANT TO RULE 29(C) F.R. CRIMINAL PROCEDURE FOR A JUDGMENT OF ACQUITTAL ON COUNT I (Docket No. 67). For the reasons that follow, the motions will be denied.

## BACKGROUND

On October 6, 2010, Samuel J.T. Moore III ("Moore") was charged in a three-count Superseding Indictment in the Eastern District of Virginia, Richmond Division. Counts One and Two charge Moore with Making and Subscribing a False Tax Return for tax years 2005 and 2006, respectively, in violation of 26 U.S.C. § 7206(1).[1] Count Three charges Moore with Tax Evasion for tax

---

[1] This section provides:

Any person who -- [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony . . . .

year 2007, in violation of 26 U.S.C. § 7201.[2]   The charges
stemmed from Moore's involvement in a fraudulent federal income
tax scheme directed at concealing sizeable sums of taxable
income earned for tax years 2005 through 2007 at Moore's former
business, Club Velvet, a so-called "gentlemen's club" which
featured strippers and lap dancers.

Moore opened Club Velvet in 2000, the registered name for
which was LA Diner.   As the club's sole owner, Moore closely
managed the business and its money, which was generated through
a variety of sources:   sales of food, alcohol, and tobacco;
receipts generated through pool tables and other games;  lap
dances; fines paid by the dancers and employees for various
infractions; door cover charges; fees to use ATMs and cash
advance services at the club; and rental fees charged to the DJ.
Evidence at trial showed that the defendant was deceiving his
accountant, Greg Jonson, with respect to the amount of cash
income that he was generating from these various sources.   Early
on, Mr. Jonson had provided Moore with "daily sheets" that he

26 U.S.C. § 7206(1).

[2] This section provides:

Any person who willfully attempts in any manner to evade or
defeat any tax imposed by this title or the payment thereof
shall, in addition to other penalties provided by law, be guilty
of a felony . . . .

26 U.S.C. § 7201.

2

was to use to account, in various categories, for every dollar received by the club on a daily basis. Moore turned in the daily sheets monthly to Mr. Jonson who, in turn, used them to calculate the club's income and prepare Moore's tax returns. At trial, evidence revealed that Moore prepared the daily sheets on a nightly basis and was the only person to complete the bottom segments of the sheets, which recorded income from cover charges, lap dances, and fines.

In late July 2005, Moore installed three ATM machines in the club that were tied to Moore's LA Diner bank account at Bank of America. After a search warrant was executed at Club Velvet in February 2008, investigators learned that Moore was supplying the cash for the ATMs himself, specifically using $20 bills. He had not reported this cash to his accountant as revenue coming in to the club. At trial, evidence revealed that a substantial amount of unreported cash was obtained from cover charges, lap dances, and fines.

Officers who executed the search warrant also found two dancewatcher books that proved to be key pieces of evidence at trial. The two books provided an accurate picture of the club's earnings from lap dances and fines during July and August 2005, as well as December 2007 through February 2008. By extrapolating averages from these two time periods, investigators were able to calculate Moore's estimated under-

reported income for the tax years at issue. From Moore's LA Diner bank records, investigators were able to determine the amount of cash flowing through the ATMs into the club. By analyzing his reported income, including cash, investigators found a significant shortfall between the amount of money which was withdrawn from the ATMs and all reported cash Moore had available to stock the ATMs.

Trial began on February 7, 2011. After more than a week of testimony and evidence, on February 16, 2011, the jury found Moore guilty of all three counts. After the jury returned its verdict, Moore filed a Motion for a New Trial and a Motion Pursuant to Federal Rule of Criminal Procedure 29(c) for a Judgment of Acquittal on Count One. The issues are now ripe for resolution.

## DISCUSSION

### 1. Motion for Judgment of Acquittal on Count One

#### A. Legal Standard

Under Fed. R. Crim. P. 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." If the jury returned a guilty verdict, "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). Entry of judgment of

acquittal is appropriate where "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient to 'establish factual guilt' on the charges in the indictment." United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986)).

"A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). In the Fourth Circuit, the well-settled test is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982) (citing United States v. Dominguez, 604 F.2d 304, 310 (4th Cir. 1979), cert. denied, 444 U.S. 1014 (1980); United States v. Stroupe, 538 F.2d 1063, 1066 (4th Cir. 1976)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996). Accordingly, if "after viewing the evidence in

the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt," the jury's verdict must stand. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993).

## B. Substantial Evidence Supported the Jury's Verdict as to Count One

Moore's only argument in support of his motion for a judgment of acquittal rests on his contention that, because the Government's tax loss calculations for tax year 2005 were incorrect, there was insufficient evidence to support the conviction on Count One. More specifically, Moore argues that, at trial, the Government conceded that it made an error in calculating the amount of understated income by at least $92,000 because it failed to give credit to sales and admission tax payments paid by Club Velvet when it calculated Moore's cash available to fund the ATM machines, which was based initially on the gross receipt figure on Moore's Schedule C. Of that $92,000, $52,367.99 was attributable to tax year 2005. Moore concedes that understating his income by approximately $48,000 in 2005 (the difference between the Government's original understatement total for 2005 of approximately $100,000 and the $52,367.99 credit for admission/sales tax payments) could still be material under 26 U.S.C. § 7206(1), but he contends

6

nonetheless that the Government's analysis failed to account for "un-contradicted [sic] and uncontroverted" evidence presented at trial concerning Moore's cash-on-hand that would have been sufficient to offset this $48,000 figure. Although Moore argues that there was "more than sufficient evidence" regarding the cash-on-hand, he supports that position only with vague, conclusory statements that his deposits to Club Velvet from his safe deposit box would have been more than sufficient to eliminate even the $100,000 initial underreporting estimate alleged by the Government for 2005. Notwithstanding the fact that the jury heard this evidence and rejected it, the Court turns its analysis to reviewing the Government's evidence.

To convict a defendant of making and subscribing a false tax return under 26 U.S.C. § 7206(1), the Government must prove four elements: (1) the defendant made and subscribed a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully. United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996). At trial, the Government elected to offer evidence under two different theories of proof: the specific items method of proof and the indirect method of proof.

Moore's argument attacks only the latter method of proof,

which was a modified bank deposits method based on ATM cash flow through the business bank account. The three ATMs Moore installed in late July 2005 were tied to LA Diner's business account at Bank of America. The Government based its modified bank deposits method on evidence that Moore stocked the ATMs himself with cash Club Velvet generated as income but which Moore failed to report to his accountant. After reviewing LA Diner's business account records and all of Moore's reported income, including cash, IRS Special Agent Robin Rager testified that there was a significant shortfall between the amount of money that was withdrawn from the ATMs and all reported available cash to fund the machines.

Testimony established that this was a conservative method of estimating the underreporting and the tax loss. This method did not account, or purport to account, for all of Club Velvet's reported and unreported cash proceeds. And, in 2005, this method only accounted for the five months the machines were in operation at the club. Furthermore, the Government made several assumptions in Moore's favor. Viewed in the light most favorable to the Government, which is entitled to every reasonable inference to be drawn from the evidence, the Court is satisfied that substantial evidence supported the jury's verdict with respect to Count One.

The Government also presented a substantial amount of evidence, in testimonial and documentary form, under its alternative method of proof, the specific items method of proof. During the trial, six former Club Velvet employees testified about Club Velvet's operations spanning a number of years, including 2005. Specifically, they testified to Moore's control of all the money that came into the club by way of door charges, cash advance fees, lap dance fees, fines, and other sources. They then estimated, based on their experience of working at the club, sometimes for several years, the average payments to the house for these revenues on a nightly basis. The witnesses' estimates were substantially more than the amounts reported on the daily sheets.

For example, one witness, who had been a waitress/door-watcher/dancewatcher during her years at the club, testified about specific high-traffic days during the year, specifically recalling that NASCAR race weekends in Richmond were extremely busy at the club. After comparing her experience on those weekends with the amounts reported by Moore on the corresponding daily sheets for those days, she testified that the amounts on the daily sheets were too low and were not possible for the volume of business she remembered.

In addition, Mr. Jonson explained that the daily sheets were created with Moore's input and purported to represent all

income items at Club Velvet.  Indeed, Mr. Jonson testified to
such a belief, but when questioned about the fact that the daily
sheets omitted, for example, an entry for cash advance fees
charged by Moore to customers who withdrew cash using their
credit cards at the club, Mr. Jonson testified that he knew cash
advances were made to customers based on register Z-tapes, but
was unaware that fees were charged to customers for the
advances.  He acknowledged that these fees were reportable
income.

Finally, the Government presented summaries prepared by
Special Agent Rager, who totaled the fines[3] paid by the dancers
and the lap dance fees paid to the house for July and August
2005 based on the dancewatcher books recovered during the
February 2008 search, and compared those totals with the daily
sheets for the same time period.  The summaries showed
significant underreporting of income by Moore during those two
months.

In sum, even if the Court were to agree (which it does not)
with Moore respecting his challenge to the Government's evidence
based on the indirect method of proof, the Government presented
substantial amounts of evidence under the specific items
evidence method of proof that Moore underreported, or failed to

[3] The fines were imposed both for various "infractions" committed
by the dancers and for failing to meet the minimum number of lap
dances per night.

10

report, gross income during tax year 2005 for several cash-based items, including lap dance fees, fines, door charges, and cash advance fees, in violation of 26 U.S.C. § 7206(1). This underreporting of income led to a sizeable tax loss to the Government. Viewing all of this evidence in a light most favorable to the Government, the Court finds that substantial evidence supports the jury's verdict. Moore's motion for a judgment of acquittal on Count One, therefore, will be denied.

## 2. Motion for a New Trial

### A. Legal Standard

Upon motion of the defendant, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a motion for a new trial is within the broad discretion of the district court. "The meaning of the phrase 'in the interest of justice' in the context of Rule 33 is not difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." United States v. Ibisevic, 761 F. Supp. 2d 326, 336-37 (E.D. Va. 2010). The district court, therefore, "'should exercise its discretion to award a new trial sparingly,'" and "a jury verdict is not to be

overturned except in the rare circumstance when the evidence 'weighs heavily' against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (quoting United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003)), cert. denied, 549 U.S. 892 (2006).

## B. The Defendant is Not Entitled to a New Trial

Moore's motion requests a new trial on all three counts in the Superseding Indictment. First, as to Count One, he requests a new trial based on the arguments presented in his motion for judgment of acquittal on Count One, arguing that the Government's error in loss calculation is significant enough that the jury could have concluded that the Government failed to prove guilt beyond a reasonable doubt. Second, he requests a new trial on all three counts because the Court erred by precluding him from cross-examining three government witnesses, former employees of Club Velvet, about their failure to file tax returns related to the cash they earned while working at the club. Third, as to Count Three, he claims that he is entitled to a new trial because the Court erred in barring him from eliciting testimony from his accountant that Moore had not filed a return for tax year 2007 as a result of instructions from his attorney. Fourth, Moore moves for a new trial based on a comment made by the Court to defense counsel, in the presence of

the jury, that Moore claims prejudiced his defense. The Court finds that none of these arguments merit a new trial.

### (i) Insufficient Evidence to Support Count One

The same reasons which form the basis for denying the motion for judgment of acquittal on Count One apply to require denial of the motion for a new trial on Count One. Those reasons will not be recounted here.

### (ii) Cross-Examination of Government Witnesses

Moore next contends that a new trial is warranted because the Court precluded him from cross-examining three witnesses about their failure to file tax returns for the cash they earned while working at Club Velvet. The witnesses' credibility, says Moore, was "very important" to the Government's proof, and his inability to cross-examine the witnesses, therefore, hampered his ability to attack the Government's case. The Government argues that it was within the Court's discretion to preclude cross-examination on this topic. Moreover, the Government asserts that the witnesses were credible and their testimony was corroborated by other testimony and documentary evidence introduced at trial.

Three former employees had failed to file tax returns during their periods of employment at Club Velvet, while three others had filed tax returns, but failed to report all cash received through tips. In considering the admissibility of this

testimony, the Court reviewed two decisions presented by defense counsel; however, neither case addressed the probative value, if any, of a witness's failure to file a tax return on that witness's credibility. Thus, after reviewing the decisions and the Federal Rules of Evidence and listening to the parties' arguments, the Court concluded that, under Rule 608(b), the three former employees who had filed tax returns that did not reflect all of their income could be cross-examined about the potentially false statements on their returns. The Court, however, denied Moore's request to cross-examine the three other employees who failed to file returns because, having filed no returns at all, they did not make potentially false statements under penalty of perjury. In other words, in not filing returns, the witnesses did not put their credibility at issue. Moore maintains that the Court erred in this ruling, and urges the Court to exercise its discretion and grant a new trial on this basis.

A defendant has a right under the Sixth Amendment's Confrontation Clause to cross-examine government witnesses on matters bearing on credibility or potential bias. Crawford v. Washington, 541 U.S. 36, 59-61 (2004); United States v. Turner, 198 F.3d 425, 429 (4th Cir. 1999), cert. denied, 529 U.S. 1061 (2000). This encompasses the right "to expose to the jury the facts from which jurors, as the sole triers of fact and

credibility, could appropriately draw inferences relating to the reliability of the witness." Davis v. Alaska, 415 U.S. 308, 318 (1974); Turner, 198 F.3d at 429 ("[P]rohibiting a criminal defendant from cross-examining a witness on relevant evidence of bias and motive may violate the Confrontation Clause, if the jury is precluded from hearing evidence from which it could appropriately draw adverse inferences on the witness's credibility."). However, a defendant's right to cross-examination has its limits, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); United States v. Smith, 441 F.3d 254, 266 (4th Cir. 2006). Accordingly, under Rule 608(b), it is within the district court's discretion whether to allow specific instances of the conduct of a witness, for the purpose of attacking the witness' character for truthfulness, to be inquired into on cross-examination of the witness. Fed. R. Evid. 608(b). Moreover, the Advisory Committee Notes following the text of Rule 608(b) state that "the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading

15

the jury, and that of Rule 611 bars harassment and undue embarrassment." Id. Advisory Comm. Note (b)(2).

During trial, the Court ruled that filing a false return -- in this context, failing to report tips received while working at Club Velvet -- fell within the general rubric of character for untruthfulness because the tax return is filed under penalty of perjury. Thus, making a false statement about income on a tax return is probative of character for untruthfulness. However, Moore offered no authority, nor could this Court locate any case or treatise, that supported his position that failing to file a return was probative of character for untruthfulness under Rule 608(b).

Further troubling to the Court was that, if it allowed counsel to pursue that line of questioning under Rule 608(b), it opened the door to testimony about the reasons why the former employees failed to file returns, thereby potentially confusing the jury about the issues and delaying the trial. The Court, therefore, found that failing to file a tax return was not probative of character for untruthfulness, and, to the extent that it might be minimally relevant, the marginal relevance was substantially outweighed by the danger of confusion of the issues, misleading the jury, and considerations of delay and waste of time under Rule 403. In his motion for a new trial, Moore has cited no authority, let alone any new authority, to

16

support his argument.  Accordingly, the Court finds that a new trial is not warranted on this ground.

(iii)    **Testimony Regarding Instructions from Lawyer**

Moore next argues that the Court should grant a new trial as to Count Three because the Court foreclosed defense counsel from cross-examining Moore's accountant during the Government's case-in-chief about the alleged fact that Moore did not file a tax return for tax year 2007 on advice of his attorney.  Again failing to cite any support for his argument, Moore claims that this decision of the Court was improper and warrants a new trial.

Before the trial began, the Court discussed with counsel on a telephone conference whether there was to be presented a reliance on counsel defense, specifically as it related to one of Moore's proposed jury instructions that was filed before the start of trial.    The Government objected to that jury instruction and the presentation of such evidence because, in fact, failing to file a tax return is not an element of tax evasion under 26 U.S.C. § 7201 -- a point further clarified in the jury instructions -- and the jury would be confused by presentation of this evidence.

Counsel for Moore advised that the defense still had under consideration whether to use a reliance on counsel defense.  The matter was thus left to abide the event.

17

At the trial, the United States called Moore's accountant. On cross-examination, Moore's counsel asked Moore's accountant whether Moore had explained why he did not file a tax return for tax year 2007. Because the response called for hearsay (whether the statement was made to the accountant by Moore or by Moore's lawyer), the response was not allowed.

Moore's counsel took the view that the testimony of the accountant related, in some unexplained way, to the reliance on advice of counsel. Recognizing that the defendant can present an advice of counsel defense without testifying, but mindful that a predicate must be laid for the defense and that the proffered defendant's hearsay did not constitute that predicate, the Court precluded the hearsay answer, but did not preclude subsequent presentation of the accountant's testimony. However, the Court explained to defense counsel that the proper order of proof for the defense required defense counsel to develop and present evidence during its case-in-chief; it was not a defense that Mr. Jonson could testify about during his cross-examination in the Government's case-in-chief because it was outside the scope of the Government's direct examination. See Fed. R. Evid. 611(b) ("Cross-examination should be limited to the subject matter of the direct examination . . . ."). Moore had the opportunity to offer testimony, including that of the accountant, to support a reliance on counsel during his case-in-

chief, but abandoned development of the defense after the Government requested waiver of Moore's attorney-client privilege. Moore had the opportunity, but balked about waiving his attorney-client privilege. Given these circumstances, the Court finds that the interests of justice do not require a new trial on Count Three on this ground.

### 4.    The Court's Comments to Defense Counsel

Finally, Moore requests a new trial based on what he describes as significant harm to defense counsel's credibility before the jury when the Court made a comment, in the presence of the jury, "to the effect that [the Court] had lost confidence in the [lead] counsel's ability to persuade the Court as to the [G]overnment's error in calculation of unreported income." Def.'s Mot. for New Trial, at 3 (second alteration in original). Though Moore concedes that the Court gave a limiting instruction, he claims that this comment so significantly harmed defense counsel's credibility, that the jury overlooked the Government's $92,000 error in the calculation of Moore's adjusted gross income and found him guilty on all three counts.

In response, the Government argues that there is a presumption that juries obey limiting instructions, and, in this case, the Court gave a limiting instruction that cured any prejudice that may have been caused by the Court's initial remark. This is so, says the Government, because the limiting

instruction explained that, though the Court's words could have been better chosen, the comment was meant to manage the presentation of the evidence and did not reflect the Court's personal opinion of defense counsel's abilities. Moreover, according to the Government, the record, on the whole, reflects no bias on the part of the Court toward defense counsel "as the Court also interjected" during the prosecutors' presentation of evidence, in the presence of the jury, several times during trial. Gov't's Resp. to Mot. for New Trial, at 7-8.

The Government's additional arguments appear to reflect a misunderstanding respecting when the Court's comment to defense counsel occurred and what was said, and therefore those arguments will not be addressed here.

Unfortunately, neither Moore nor the Government undertook to obtain a transcript of the actual exchange between the Court and defense counsel. However, the Court has reviewed the transcript and notes that the comment occurred during defense counsel's direct examination of Mr. Jonson, and not, as the Government appears to believe, during the cross-examination of Special Agent Rager. Specifically, the exchange occurred when defense counsel was attempting to offer into evidence Defendant's Exhibits 9, 10, 11, 12, 13, and 14, which were Moore's Profit and Loss Statements ("P&Ls") for tax years 2005, 2006, 2007, 2008, 2009, and part of 2010, respectively.

The Government objected to the 2009 and 2010 P&Ls, arguing that they were irrelevant given that they reflected income of Club Velvet a year and a half after the execution of the search warrant in February 2008. Defense counsel argued in response that, when he cross-examined Mr. Jonson during the Government's case-in-chief, he inquired into all of 2008 and 2009, without objection by the Government, in order to show a continued pattern of accounting even after the warrant, and therefore the Government waived its objection with respect to the present line of questioning and exhibits.

That prompted the Government to object based on a lack of foundation that established relevance, noting that "[t]here has been no discussion, no foundation about the procedures at Club Velvet, that it's been run the same as the charged years, that it has any bearing on looking at the charged years and how the P&L statements came into being versus how they are now." Trial Tr., Feb. 14, 2011. In response, the Court allowed defense counsel to attempt to lay a foundation for the 2009 and 2010 P&Ls:

> THE COURT: What is the basis for getting it in?
>
> [DEFENSE COUNSEL]: The government has offered part of 2008 to show a pattern. The rest of the subsequent years, I submit, are relevant to show a pattern as well.
>
> THE COURT: And [the Government] objects because you have not laid the predicate to

show in any of the evidence that the club operated in the same fashion after the raid as it did before the raid. Is that your objection?

[GOVERNMENT COUNSEL]: Yes, Your Honor, there's been no testimony from any employee.

THE COURT: I understand. That's her objection. [Mr. Jonson] can't testify to that because he doesn't know. He doesn't know how they kept the books on lap dances and other things.

[DEFENSE COUNSEL]: He testified in the government's case --

THE COURT: I understand what he testified to. He did not testify about how the lap dance book was kept.

[DEFENSE COUNSEL]: Yes, he did in part. Yes, he did. He testified that after the raid, as did three other witness[es] said that, something to the same effect. After the raid -- sorry, Your Honor. I didn't know. I didn't know whether --

THE COURT: I have no confidence that what you're saying is correct at this juncture.

[DEFENSE COUNSEL]: I'll lay a foundation now or I'll attempt to lay a foundation now. Maybe that's quicker.

THE COURT: Well, I don't think there's been a foundation so far. I don't see how he can testify to a foundation, but if he does, you can try it, because right now there isn't a foundation to show that the way that club was operated after the raid was the same as it was in '09 and '10. It just hasn't been done yet.

You can use the daily sheets. Sure, there's evidence they used the daily sheets, but that isn't what the focus of the case is

about. The focus of the case is what was going on with the way they recorded lap dances and the fines and where the money came from and so forth.

[DEFENSE COUNSEL]: Correct. Whether they picked up all income. Whether they reported all income. So the testimony --

THE COURT: I don't want you to testify, Mr. Barger. I want you to lay the foundation.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: If he knows, he knows. If you don't know, just say you don't know.

Now, go ahead and try to lay the foundation because right now you don't have it. You said you were going to. Do it.

Trial Tr., Feb. 14, 2011.

Defense counsel then attempted to lay a foundation for the two exhibits, but the argument between defense counsel and the Government over the exhibits continued so long that the Court excused the jury for lunch to hear continued argument without their presence. Ultimately, the Court sustained the Government's objection to defense counsel's motion to enter the two exhibits, explaining that there was a lack of foundation for the two P&Ls, in contrast to the foundation laid for the previous years', because Mr. Jonson did not know the bases of the entries on the daily sheets. The Court also noted that any marginal relevance the two exhibits might have was outweighed by delay, confusion, presentation of cumulative evidence, and the

fact that the jury likely would have to guess the foundation for the two exhibits.

The Court then recessed for lunch, after which defense counsel moved for a mistrial based on the Court's statement to defense counsel that the Court had "no confidence that what you're saying is correct at this juncture" during the exchange before the lunch recess. After hearing argument on the motion from Moore and the Government, the Court explained:

> I think it's the obligation of the Court to study any motion for a mistrial and to ascertain if there's a basis for it, and if there's a basis, to grant it. And if there's not a basis, if there's some conduct that is perceived to be prejudicial, then the Court is obligated, I believe, under the law to find any alternative that will avoid a mistrial but will solve whatever perceived problem there is. . . .
>
> It is the general rule that a mistrial is to be avoided, if possible, and should always consider, the Court should, whether the giving of a curative instruction or some less drastic alternative is appropriate. And that has to be done before declaring a mistrial.
>
> The granting of a mistrial is inappropriate unless there's a manifest necessity for terminating the proceedings. The ends of public justice would be defeated unless the manifest injustice standard is applied, it seems to me.
>
> I think it's correct that I did say I had lost confidence in Mr. Barger, in his ability to explain something that he was talking about, and I will just simply instruct the jury that that's not to be

considered by them in any way in deciding the case. It has no probative value as to the ability of the United States to prove Mr. Moore's guilt beyond a reasonable doubt and it should be just disregarded.

I believe that approach will limit any prejudice that may have obtained from that remark. So the motion for mistrial is denied.

Trial Tr., Feb. 14, 2011. The jury then returned to the courtroom, where the Court immediately instructed them:

Well, ladies and gentlemen, before lunch when Mr. Barger was explaining the basis for an objection or a theory, I said that I had lost confidence in his ability to explain something to me hoping to find some way that I could get an answer to the question that was on the table at the time, and you shouldn't pay any attention to what I said as affecting Mr. Barger or comment upon his ability, and it certainly has nothing to do with whether Mr. Moore is or is not guilty of any of the charges against him.

So just disregard what I said in its entirety and don't pay any attention to that. You need to decide the case on the merits of the case. All right. Yes.

Trial Tr., Feb. 14, 2011. Moore has moved for a new trial on all counts based on the Court's comment to defense counsel.

Denial of a defendant's motion for a mistrial is a decision that rests within the sound discretion of the district court. United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997). A district court "has the duty to conduct a jury trial 'in a general atmosphere of impartiality.'" United States v. Castner,

50 F.3d 1267, 1272 (4th Cir. 1995) (quoting United States v. Cassiagnol, 420 F.2d 868, 878 (4th Cir. 1970), cert. denied, 397 U.S. 1044 (1970)). And, though a district court "'must not create an appearance of partiality by continued intervention on the side of one of the parties,'" id. (quoting United States v. Norris, 873 F.2d 1519, 1526 (D.C. Cir. 1989)), a court must "'exercise reasonable control over' the interrogation of witnesses and the presentation of evidence in order to ensure the effective determination of the truth, to avoid needless waste of time in the presentation of a case, and to circumvent undue witness intimidation and embarrassment," id. (quoting Fed. R. Evid. 611(a)). "Particularly in a complex case involving numerous witnesses, the district court has a crucial duty to ensure 'that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury.'" Id. (emphasis added) (quoting United States v. Seeright, 978 F.2d 842, 847 (4th Cir. 1992)). Furthermore, a district court's approach in fulfilling its trial management obligations may range from "temperate and understated" to "seek[ing] greater involvement and tak[ing] a firmer role." Smith, 452 F.3d at 333. As the Fourth Circuit has explained, "[t]rials are serious business," and a district court's questions to counsel "may be only part and parcel of a pointed adversarial process designed to develop a clear set of facts in

a relatively short amount of time." Id. "A tart remark or two might be what is needed to keep a lengthy trial on track." Id.

The Court finds that the comment on which the motion is based did not express, and could not reasonably have been construed to express, any bias toward Moore or his counsel. Furthermore, the comment, coupled with the curative instruction to the jury, did not result in manifest prejudice to Moore's defense. By February 14, 2011, the date of the comment, the trial had been underway for a week. Testimony from numerous witnesses, combined with massive amounts of documentary evidence and issues of complex accounting, required the Court to cabin and control the evidence and testimony. At other points in the trial, the Court was forced to intervene during questioning by counsel for Moore and the Government and request clarification or move questioning past a certain subject. At the time of the comment at issue, defense counsel had been treading in circles with respect to whether Mr. Jonson could lay a foundation for the two exhibits based solely on his alleged prior testimony that he somehow knew how the dancewatcher books were kept. In response to questions from the Court about how an accountant could know how the dancewatcher books were kept, defense counsel expressed confusion in a nonsensical answer. This response caused the Court to comment that it had no confidence that what was being said by defense counsel was correct. In no way, given

the context, was this comment a reflection of the Court's views with respect to defense counsel's ability or any bias toward Moore.

In fulfilling its duty to see that the facts of the case are developed properly and the jury is not confused, "the court may act to clarify testimony and restrict questioning that the court feels will be unproductive and confusing." United States v. Atkinson, 512 F.2d 1235, 1238 (4th Cir. 1975). The Court's comment was intended, and did, just that. After the Court's comment, defense counsel then, realizing that he needed to lay a foundation with the witness, proceeded to attempt to do so in a focused and more well-defined manner. The interchange between the Court and defense counsel reveals no bias toward Moore or his counsel's ability to represent him effectively.

When defense counsel brought the comment to the attention of the Court, rather than granting Moore's motion for a mistrial, the Court gave a limiting instruction to the jury to the effect that they should disregard the Court's comment, that it was not meant as a comment upon defense counsel's ability, and that it had no relevance to whether Moore was, in fact, guilty or innocent. The Fourth Circuit generally follows the presumption that juries obey the limiting instructions of the district court. United States v. Francisco, 35 F.3d 116, 119 (4th Cir. 1994); see also Richardson v. Marsh, 481 U.S. 200, 211

(1987) ("[J]uries are presumed to follow their instructions.");
United States v. Ince, 21 F.3d 576, 584 (4th Cir. 1994) ("[W]e
recognize the presumption of cure by a court's instruction.").
In United States v. Atkinson, 512 F.2d 1235 (4th Cir. 1975), the
Fourth Circuit found no error in the district court's refusal to
grant a mistrial after certain comments by the district court,
noting that the district court instructed "the jury to draw no
inference against either side to whom an admonition of the court
may have been addressed, not to assume the court held any
opinion on the matters to which its questions related, and to
judge for themselves the questions of fact of the case without
regard to what the court may have said during the trial," id. at
1238.    In  this  case,  the  Court's  curative  instruction,
presumptively obeyed by the jury, directed the jury to disregard
the Court's statement, to not view the statement as any comment
upon  defense  counsel's  ability,  and  to  note  that  it  was
irrelevant to Moore's guilt or innocence.    Accordingly,  the
Court finds that its comment to defense counsel did not reflect
any bias toward Moore or so prejudice the proceedings that a new
trial is warranted in the interest of justice.

     The record here provides no basis for granting a new trial
for any reason and, therefore, the Court denies the Defendant's
motion for a new trial.

## CONCLUSION

For the foregoing reasons, the Defendant's MOTION FOR A NEW TRIAL (Docket No. 66) and MOTION PURSUANT TO RULE 29(C) F.R. CRIMINAL PROCEDURE FOR A JUDGMENT OF ACQUITTAL ON COUNT I (Docket No. 67) will be denied.

It is so ORDERED.

                                    /s/            REP

                        Robert E. Payne
                        Senior United States District Judge

Richmond, Virginia
Date:   June 16, 2011